# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER ANNE THORNBERRY, | Case No. 1:25-cv-00597-JLT-SKO |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE AFFIRMED |
| v. | |
| FRANK BISIGNANO, Commissioner of Social Security, | (Doc. 17) |
| Defendant. | 14-DAY DEADLINE |
| _____/ | |

## I.      INTRODUCTION

Plaintiff Jennifer Anne Thornberry ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the "Act").  (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment be denied, and that the final decision of the Commissioner be affirmed.

---

[1] The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. On April 13, 2026, this case was reassigned to the undersigned.  (*See* Doc. 20.)

## II.   BACKGROUND

Plaintiff was born in 1974, has at least a high school education, and previously worked as a massage therapist, x-ray technician, administrative assistant, a medical center customer service representative, and a medical center admissions clerk.  (Administrative Record ("AR") 45, 46, 62, 123, 137, 141, 158, 161, 178, 377, 550.)  Plaintiff filed claims for DIB and SSI payments on April 25, 2018, and August 16, 2018, respectively, alleging she became disabled on June 9, 2016, due to lupus, fibromyalgia, type II diabetes, neuropathy, migraines, Epstein Barr Syndrome, vertigo, attention deficit disorder (ADD), and anxiety with panic attacks.  (AR 25 ,124, 142, 162, 185, 192, 375.)

Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on July 1, 2020, finding Plaintiff not disabled.  (AR 32–47.)  On March 12, 2021, Plaintiff filed another SSI application (AR 5356, 5383), and on March 30, 2021, also appealed the ALJ's 2020 decision to the district court (AR 5410–12).  The parties thereafter voluntarily remanded the case for further proceedings.  (AR 5413–15.)  Upon remand, the Appeals Council consolidated Plaintiff's two SSI claims directed the assigned ALJ to conduct a *de novo* hearing, to take any further action needed to complete the record, and to issue a new written decision.  (AR 5418–20.  *See also* AR 5252.)  The ALJ thereafter conducted a hearing and issued a "partially favorable" decision on October 20, 2023, finding Plaintiff "was not disabled prior to October 3, 2023, but became disabled on that date and has continued to be disabled through the date of this decision."  (AR 5252–70.)

### A.   Relevant Evidence of Record[2]

#### 1.   Medical Evidence

In March 2016, Plaintiff complained of abdominal pain.  (AR 530–31.)  On examination, Plaintiff had no abdominal pain with palpation, and her muscle tone and strength were normal in both her upper and lower extremities.  (AR 530–31.)

Plaintiff presented for a follow up appointment to treat her lupus and fibromyalgia in December 2016.  (AR 727–32.)  She complained of multiple joint pain, stiffness, fatigue, headache,

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

anxiety, depression, and sleep disturbance.  (AR 727.)  Body tenderness was noted.  (AR 729–30.)  She was also observed to be "anxious" and "emotional."  (AR 730.)  Her lupus was indicated as "stable."  (AR 731.)

In February 2017, clinical psychologist James McNairn, Psy.D., performed a psychological evaluation of Plaintiff.  (AR 549–54.)  Plaintiff reported chronic anxiety with racing thoughts, poor sleep and appetite, and impaired concentration ("easily distracted"), attention, and memory.  (AR 549.)  She drove to the appointment alone, arrived on time, and completed a brief pre-interview questionnaire.  (AR 549.)  Plaintiff stated she has been prescribed psychiatric medications, including antidepressants and anti-anxiety medication, and has attended mental health counseling.  (AR 550.)  She reported "good relationships" with coworkers.  (AR 551.)  She relayed that she completes household chores including cooking and laundry, with help from her teenage sons.  (AR 551.)  Plaintiff reported that she does shopping and errands independently, and does not require assistance with feeding, bathing, dressing, driving, or budgeting.  (AR 551.)  Plaintiff socializes with family, friends, and neighbors, and her leisure activities include television, movies, music, computer games, and hobbies.  (AR 551.)

Dr. McNairn observed that Plaintiff was cooperative and pleasant throughout the evaluation.  (AR 552.)  Plaintiff's mood was described as depressed and her affect anxious.  (AR 552.)  Dr. McNairn noted that Plaintiff's thought process was "rambling and tangential," requiring him to repeat questions and redirect her.  (AR 552.)  Plaintiff was able to recall three digits backward, six digits forward, and one-out-of-three words after a delay.  (AR 552.)  She had impaired mathematical abilities and could not spell the word "world" backwards.  (AR 553.)  Dr. McNairn found Plaintiff was able to correctly interpret proverbs and her abstract thinking was intact.  (AR 553.)  Plaintiff followed "simple and short instructions."  (AR 553.)

Plaintiff complained of bilateral ear problems in April 2018.  (AR 587–89.)  Her physical examination was normal, with normal gait, range of motion, mood, and affect.  (AR 589.)  That same month, Plaintiff presented for a rheumatology follow-up.  (AR 590–94.)  Her diagnoses of lupus and fibromyalgia were noted.  (AR 590.)  She exhibited 18 out of 18 fibromyalgia tenderness points.  (AR 592–93.)  It was noted that Plaintiff had a "lupus flare" after stopping medication, which she had

since resumed. (AR 590.) Her lupus was assessed as "stable," and no proteinuria was observed. (AR 594.)

In May 2018, Plaintiff presented with an exacerbation of asthma symptoms, including wheezing. (AR 1101–1105.) She was given a breathing treatment, after which she felt better. (AR 1103.) She was also provided with a peak flow meter to monitor her progress of nebulizer treatment. (AR 1103.) That same month, Plaintiff reported feeling "very, very anxious." (AR 1099.)

Plaintiff presented for a surgery consultation due to urinary incontinence in June 2018. (AR 559–61.) Her physical examination was normal, with normal range of musculoskeletal motion, normal effort and breath sounds, and normal mood and affect. (AR 561.) That same month, Plaintiff complained of mid back and bilateral rib pain, along with chronic neck and low back pain. (AR 1076.) She reported having received acupuncture, which helped for a day with each treatment. (AR 1076.) An x-ray of Plaintiff's spine was normal. (AR 1077.) That same month, Plaintiff complained of cough and nasal congestion, with mild bilateral wheezing. (AR 1079–82.) Her oxygen saturation level was 99%. (AR 1081.) At a therapy session, Plaintiff was observed to be cooperative, with anxious, tearful mood. (AR 1087.)

In July 2018, Plaintiff presented as "tearful" and complained of always being "in a fog" and having "pain all over." (AR 1054–57.) Plaintiff's physical examination was normal, with normal effort and breath sounds. (AR 1055.) That same month, Plaintiff reported that she was "tired, "aching all over," and had "a lot of anxiety." (AR 1064.) Her physical examination was normal, with normal gait, normal sensation in her bilateral feet, and no cervical adenopathy or edema. (AR 1065.) Her "lupus serologic activities" were within normal limits. (AR 1169.)

Plaintiff requested that a cane be prescribed, as she reported her "gait becomes unstable," in August 2018. (AR 1234.) She was given a cane and was recommended to do "physical exercises every day." (AR 1234.) Her lupus was indicated as "stable." (AR 1169.) In September 2018, Plaintiff's treating psychiatrist reported that Plaintiff "is currently seeing a psychotherapist and taking medications for depression, anxiety, [PTSD], and insomnia. (AR 1171.) Plaintiff complained of severe anxiety in November 2018. (AR 1944–49.) Her medication was adjusted, and she was advised to continue psychotherapy. (AR 1949.)

In September 2019, Plaintiff complained of chronic left elbow pain, with minimal numbness or tingling in her arms.  (AR 4847–48.)  On examination, Plaintiff exhibited tenderness in her left elbow, and tenderness and decreased range of motion in her shoulders.  (AR 4848.)  X-ray imaging showed bilateral rotator cuff syndrome.  (AR 4854.)  In January 2020, Plaintiff attended an appointment to treat her "depression/stress/anxiety," "posttraumatic stress," and "insomnia."  (AR 3218.)  She reported "feeling much better" after starting medication, but that "talk therapy makes her feel worse."  (AR 3219.)

### 2.    Opinion Evidence

In February 2017, following his consultative examination, Dr. McNairn opined that Plaintiff could perform "simple and repetitive tasks," and had a mild impairment when performing complex and detailed tasks and performing activities consistently without additional supervision.  (AR 554.)  Plaintiff had a mild to moderate impairment in accepting instructions from a supervisor, interacting appropriately with coworkers and the public, and maintaining regular work attendance.  (AR 554.)  Dr. McNairn opined that Plaintiff was moderately to seriously impaired in completing a normal workday or workweek without interruptions from her psychiatric symptoms.  (AR 554.)  Finally, Dr. McNairn found a moderate to serious impairment in the claimant's ability to deal with the usual workplace stresses.  (AR 554.)

State agency medical expert Eugene Campbell, Ph.D., opined in June 2018 that Plaintiff had the ability to understand, remember, carry out, maintain concentration, attention, persistence, and pace for "simple 1-2 step instructions" and was "capable of working in a setting with limited social contact."  (AR 135–36.)  In the "Findings of Fact and Analysis of Evidence" ("FOFAE"), Dr. Campbell noted that Plaintiff was "SRT [simple repetitive tasks] capable."  (AR 129.)  During the "Psychiatric Review Technique" ("PRT")[3], under "Additional Explanation," Dr. Campbell wrote

---

[3] Where a claimant alleges a mental impairment, steps two and three require the ALJ to apply the psychiatric review technique outlined at 20 C.F.R. §§ 404.1520a, 416.920a to determine the severity of the claimant's impairment at step two, and to determine whether the impairment satisfies Social Security regulations at step three.  If the claimant is found to have a medically determinable mental impairment, the ALJ must "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s)," then "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of [Section 404.1520a,]," which specifies four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  20 C.F.R. §§ 404.1520a(b), (c)(3), 416.920a(b), (c)(3).  The four functional areas are known as the "paragraph B" criteria.

"See FOFAE.  NPSRT [non-public simple repetitive tasks] capable."  (AR 131.)

In September 2018, State agency medical expert Dara Goosby, PsyD, also found that Plaintiff had the ability to understand, remember, carry out, maintain concentration, attention, persistence, and pace for "simple 1-2 step instructions" and was "capable of working in a setting with limited social contact."  (AR 156–57.)  Dr. Goolsby "adopted" the "non-public, simple tasks" opinion of Dr. Campbell in both the FOFAE and PRT.  (AR 150, 152.)

### 3.    Plaintiff's Statement

In August 2018, Plaintiff completed a function report.  (AR 403–11.)  She alleged difficulty with her memory, "constantly forgetting" her doctor appointments.  (AR 407.)  She also reported she was "very antisocial" because her "illness makes [her] panic."  (AR 407.)  She claimed she developed blisters if she stayed in the sun too long.  (AR 406.)  Plaintiff reported she could drive a car, pay bills and count change, shop in stores.  (AR 406.)

### B.    Administrative Proceedings

The Commissioner denied Plaintiff's applications for benefits initially on June 25, 2018, and again on reconsideration on September 7, 2018.  (AR 185–89, 192–96.)  Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on July 1, 2020, finding Plaintiff not disabled.  (AR 32–47.)  On March 12, 2021, Plaintiff filed another SSI application (AR 5356, 5383), and on March 30, 2021, also appealed the ALJ's 2020 decision to the district court (AR 5410–12).  The parties thereafter voluntarily remanded the case for further proceedings.  (AR 5413–15.)

Upon remand, the Appeals Council consolidated Plaintiff's two SSI claims directed the assigned ALJ to conduct a *de novo* hearing, to take any further action needed to complete the record, and to issue a new written decision.  (AR 5418–20.  *See also* AR 5252.)  At a hearing held on October 3, 2023, Plaintiff appeared via telephone with counsel and testified before an ALJ as to her alleged disabling conditions and work history.  (AR 5290–310, 5314–15.)  A vocational expert (VE) also testified at the hearing.  (AR 5310–14, 5315–23.)

### C.    The ALJ's Decision

On October 20, 2023, the ALJ issued a "partially favorable" decision, finding Plaintiff "was not disabled prior to October 3, 2023, but became disabled on that date and has continued to be

6

disabled through the date of this decision." (AR 5252–70.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 5255–70.) The ALJ decided that Plaintiff met the insured status requirements of the Act through September 30, 2020, and had not engaged in substantial gainful activity since June 9, 2016, the alleged onset date (step one). (AR 5252, 5255.) At step two, the ALJ found Plaintiff's cannabis abuse to be severe since the alleged onset date. (AR 5255–56.) Since June 9, 2016, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 5256–58.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC since June 9, 2016:

> to perform sedentary work as defined in 20 CFR [§§] 404.1567(a) and 416.967(a), with the following exceptions: She requires work that will allow her to change postural positions on an as needed basis, in order to stretch her arms and legs, but to remain seated, as long as she is not off task more than five percent of a normal workday with normal breaks. She must never be required to climb ladders, ropes, or scaffolds, but is able to occasionally climb ramps and stairs. She is able to frequently balance with a handheld assistive device that is required at all times when standing. She is able to frequently stoop, crouch, kneel, and crawl. She is further limited to occasional, bilateral, overhead and behind the back reaching. She is able to frequently handle and finger, bilaterally. [Plaintiff] is further limited in that she must avoid occasional exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas. She must also avoid occasional use of moving and/or dangerous machinery and occasional exposure to unprotected heights. She is further limited to work that consists of no more than simple, routine, repetitive tasks. She is able to maintain sufficient attention and concentration for extended periods of two-hour segments, during a normal workday, with normal breaks, but only in work that consists of no more than simple, routine, repetitive tasks. She is further limited to work that requires no more than occasional interaction with the public and

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours per day, for 5 days per week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

coworkers. She is further limited to work that requires no more than occasional supervision, which is defined as requiring a supervisor's critical checking of her work.

(AR 5258–67.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not fully supported."  (AR 5261.)

The ALJ determined Plaintiff could not perform her past relevant work since June 9, 2016 (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five).  (AR 5267, 5268.)  In making this determination, the ALJ posed a series of hypothetical questions to the VE based upon Plaintiff's RFC.  (AR 5315–23.)  In response, the VE testified that a person with the specified RFC could perform occupations such as touch up screener, final assembler, and a bonder operator.  (AR 5318–21.)  The ALJ ultimately concluded Plaintiff was "not disabled prior to October 3, 2023, but became disabled on that date and has continued to be disabled through the date of this decision."  (AR 5269–70.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on March 17, 2025.  (AR 5243–48.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

### III.     LEGAL STANDARD

#### A.     Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180

8

F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.      Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by

inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### IV.    DISCUSSION

Plaintiff contends that the ALJ erred in the assessment of the medical opinions of State agency medical experts Drs. Campbell and Goosby that she was limited to one-to-two step tasks, resulting in an RFC that is not supported by substantial evidence, and further failed to articulate clear and convincing reasons for discounting her testimony regarding her subjective complaints. (Doc. 17.) The Commissioner responds that the ALJ's consideration of the medical opinions was proper and supported by substantial evidence and that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 19.) The undersigned agrees with the Commissioner.

**A.    The ALJ's Treatment of Drs. Campbell's and Goosby's Opinions Was Not Erroneous**

**1.    Legal Standard**

Plaintiff's claims for DIB and SSI are governed by the agency's regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. §§ 404.1520c, 416.920c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)–(b); 416.920c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant.  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations.  Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal citations omitted).  Accordingly, under the regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)).  *See also id*. § 416.920c(b).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Id*. at 792 (quoting 20 C.F.R. §

404.1520c(c)(2)).  *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3).  Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v).  However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792.  "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'"  *Id*. (quoting § 404.1520c(b)(3)).  *See also id*. § 416.920c(b)(3).  "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'"  *Id*.  Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in their decision, even in the discussions required by 20 C.F.R. §§ 404.1520c, 416.920c.  *See* 20 C.F.R. §§ 404.1520b(c)(3), 415.920b(c)(3).

With these legal standards in mind, the Court reviews the weight given to the opinions of State agency medical experts Drs. Campbell and Goosby.

**2.     Analysis**

In considering State agency medical experts Drs. Campbell's and Goosby's opinions that Plaintiff had the ability to understand, remember, carry out, maintain concentration, attention, persistence, and pace for "simple 1-2 step instructions," the ALJ determined that such opinions were "unpersuasive" because

[n]either Dr. Campbell nor Dr. Goosby supported the restriction to one-to-two step instructions with an explanation as to the basis of that limitation.  Further, Dr. Campbell elsewhere simply indicated, without mention of one-to-two step instructions, that the claimant was capable of "NPSRT" and "SRT."  Dr. Goosby simply adopted the limitation to "non-public, simple tasks," again without mention of a limitation to one-to-two step tasks.  Even the psychological consultative examiner Dr. James McNairn, Psy.D., did not identify a limitation to one-to-two step tasks; he simply found no limitation with simple and repetitive tasks.  [Plaintiff] is also independent with activities that include driving and budgeting and engages in leisure activities that include computer games.  As to driving, the undersigned notes

12

that, even minimal operation of a motor vehicle requires substantial attention and concentration, in order to remember, understand and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds. Driving is certainly not a simple and routine set of functions.

(AR 5263 (internal citations omitted).) The undersigned finds that the ALJ properly evaluated the supportability and consistency of the opined "simple 1-2 step instructions" limitation.

a.      Supportability

Regarding supportability, the ALJ determined that the "simple 1-2 step instructions" limitation was without explanation and, in fact, was internally inconsistent with other portions of the doctors' opinions. (AR 5263.) Specifically, the ALJ observed that both Drs. Campbell and Goosby indicated elsewhere in their opinions that Plaintiff was capable of "simple repetitive tasks" and "simple tasks," respectively, without further limiting such tasks to only one-to-two steps. (AR 5263.) "There is a meaningful difference between a limitation to simple, repetitive tasks and a limitation to simple, one- or two-step job instructions," as the "former requires a higher reasoning level." *Howell v. Kijakazi*, No. 2:23-CV-00120-JDP-SS, 2023 WL 8452155, at *4 (E.D. Cal. Dec. 6, 2023); *see Evan T. B. v. Bisignano*, No. 5:24-CV-01428-JC, 2025 WL 2481056, at *5 (C.D. Cal. Aug. 28, 2025) ("The ALJ's limitation to simple, routine, and repetitive tasks is not the same as the ability to perform simple one- and two-step tasks.") (collecting cases, including *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1001–1003 (9th Cir. 2015)). The internal inconsistency between limiting Plaintiff to "simple 1-2 step instructions" and explaining in the FOFAE and PRT discussion that she was capable of "simple repetitive tasks" or "simple tasks" is a specific and legitimate reason to find the opinions of Drs. Campbell and Goolsby unsupported and, therefore, unpersuasive. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that an ALJ may cite internal inconsistencies in a physician's opinion); *see also Ocejo v. Astrue,* No. 1:10-CV-01604 GSA, 2011 WL 5554358, at *11 (E.D. Cal. Nov. 15, 2011) ("Rejecting an opinion that contains internal inconsistencies is a specific and legitimate reason to discount the opinion.").

b.      Consistency

As to consistency, the ALJ found Drs. Campbell's and Goosby's opined "simple 1-2 step instructions" limitation was inconsistent with the other medical evidence, specifically the opinion of

13

consultative examiner of Dr. McNairn, who found only a "simple repetitive tasks" limitation, and Plaintiff's reported activities of driving, budgeting, and playing computer games. (AR 5263.) The ALJ observed that the act of driving in particular is "certainly not a simple and routine set of functions," as it "requires substantial attention and concentration, in order to remember, understand and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds." (AR 5263.)

Plaintiff asserts that the ALJ's inaccurately characterized Dr. McNairn's opinion as inconsistent with those of Drs. Campbell and Goosby because, notwithstanding his limitation to "simple and repetitive tasks," his evaluation also found that Plaintiff followed "simple and **short** instructions," which is "fully supportive" of the opined "simple 1-2 step instructions" limitation. (Doc. 17 at 7 (citing AR 553) (emphasis added).) This argument is misplaced.

Just like "simple and repetitive tasks," the ability to follow "simple and short instructions" is not "supportive"—and is in fact distinguishable from—an ability to perform only "simple 1-2 step instructions." *See Crellin v. Comm'r of Soc. Sec.*, No. 1:24-CV-00996-BAM, 2025 WL 2432589, at *7 (E.D. Cal. Aug. 22, 2025) (finding opinion that the plaintiff was "not significantly limited in carrying out very short and simple instructions" not the same as a limitation to "only one-to-two-step tasks."). *See also Leach v. Kijakazi*, 70 F.4th 1251, 1256–57 (9th Cir. 2023) (observing that "a limitation to 'short, simple instructions' does not necessarily restrict a claimant to level-one jobs," which "encompass instructions that include, at most, two tasks," because "'short, simple instructions' could comprise more than two tasks."). The undersigned declines to find that the ALJ mischaracterized the record in this regard.

Plaintiff further contends that the ALJ's reliance on Plaintiff's reported ability to drive was improper, citing *J.M. v. Kijakazi*, No. 23-CV-03198-SVK, 2024 WL 966999, at *8 (N.D. Cal. Mar. 6, 2024). (Doc. 17 at 7–8.) In that case, the court found that the ALJ failed to explain "why Plaintiff's ability to drive bears on the question of whether he can perform simple and detailed tasks or is instead limited to performing simple 1-2 step instructions in a non-public setting." *Id*. at *8. Here, in contrast, the ALJ provided a thorough explanation of how "even the minimal operation of a motor vehicle" undermines Drs. Campbell's and Goosby's opined "simple 1-2 step instructions" limitation because

14

it "requires substantial attention and concentration, in order to remember, understand and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds," and, as such, "is certainly not a simple and routine set of functions." (AR 5263.) Plaintiff's argument, and her reliance on *J.M. v. Kijakazi*, is therefore unpersuasive.

In sum, the undersigned finds that the ALJ's conclusion that Drs. Campbell's and Goosby's opined "simple 1-2 step instructions" limitation lacked support and was inconsistent with the medical record is legally sufficient and supported by substantial evidence.

**B.    The ALJ Properly Found Plaintiff Less Than Fully Credible**

**1.    Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[5] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may

---

[5] The undersigned disagrees with the Commissioner that a lesser legal standard applies. (*See* Doc. 19 at 4 n.1.)

consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### 2.    Analysis

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 25.) In view of this finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Here, the ALJ identified at least two valid reasons for discrediting Plaintiff's testimony.

#### a.    Objective medical evidence

First, the ALJ considered the extent to which "the degree of limitation alleged" by Plaintiff during the relevant period was consistent with the objective medical findings. (AR 5259–61.) While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis." *Burch*, 400 F.3d at 680, 681. *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999). Moreover, "[w]hen objective medical evidence in the record is ***inconsistent*** with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original) (collecting cases); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

16

Here, the ALJ noted that that in contrast to Plaintiff's complaints of "always being in a fog," "having pain all over," "multiple join pain, stiffness, fatigue, and headache," "wheezing," "chronic anxiety with racing thoughts," "impaired concentration, attention, and memory," and "antisocial" behavior (AR 5259–61), the medical evidence showed normal muscle strength and tone (AR 530–31), normal range of motion in her joints (AR 589), normal gait (AR 589, 1065), normal sensation in her bilateral feet (AR 1065), routinely normal physical examinations (AR 561, 589, 1055, 1065), normal x-ray imaging of the spine (AR 1077), "stable" lupus symptoms on medication with normal "lupus serologic activities" level (AR 594, 731, 1169), no proteinuria (AR 594), oxygen saturation level of 99% (AR 1081), punctuality at the consultative examination and ability to complete a pre-evaluation questionnaire without difficulty (AR 549), the ability to correctly interpret proverbs and intact abstract thinking (AR 553), and the ability to recall six digits forward (AR 552).

Plaintiff does not dispute this evidence. Instead, she argues, citing Ninth Circuit authority, that "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." (Doc. 17 at 10 (citing *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).) However, in that case, the Ninth Circuit held that its "cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Id.* at 1277. Moreover, the ALJ did not merely provide a summary of the medical evidence. Unlike in *Lambert*, the ALJ here detailed Plaintiff's complaints of "always being in a fog," "having pain all over," "multiple join pain, stiffness, fatigue, and headache," "wheezing," "chronic anxiety with racing thoughts," "impaired concentration, attention, and memory," and "antisocial" behavior, then contrasted that testimony with opposing evidence from the medical record showing frequent normal mental status findings. *Cf. Lambert*, 980 F.3d at 1277 (""We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [claimant's] pain testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony.") (quoting *Brown-Hunter*, 806 F.3d at 494). The identification of specific allegations and evidence contradicting those allegations permitted the undersigned to review the ALJ's reasoning. Plaintiff's argument is therefore

unavailing. *See Kaufman v. Kijakazi*, 32 F.4th 843, 851–52 (9th Cir. 2022) ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing."); *Guthrie v. Kijakazi,* No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) *(*the ALJ sufficiently explained her reasons for discounting the plaintiff's symptom testimony, and "we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufman*, 32 F. 4th at 851); *Cooper v. Kijakazi*, No. 20-15935, 2022 WL 1553170, at *1 (9th Cir. May 17, 2022) (finding no error where the ALJ summarized the plaintiff's "relevant testimony concerning her key asserted limitations," "stated that he found 'these statements of extremely limited physical capacity inconsistent with the overall record,'" and then "explained the specific reasons upon which that conclusion was based."); *Young v. Saul*, 845 F. App'x 518, 519–20 (9th Cir. 2021) ("The ALJ specifically cited Young's written statements and testimony as among the items he had "carefully consider[ed]," and he gave specific reasons why he did not credit Young's claims concerning the 'limiting effects' of Young's symptoms . . . . The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony."). *See also Smartt*, 53 F.4th at 499 ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."); *Razaqi v. Kijakazi*, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *5 (E.D. Cal. May 9, 2022) ("The ALJ did not necessarily match each piece of evidence with the testimony it purportedly undermined, but no controlling precedent requires that level of specificity. No inferential leaps are required to find the ALJ's reasoning clear and convincing."); *cf. Brown-Hunter*, 806 F.3d at 495 (finding error where the ALJ stated only a general, nonspecific finding regarding credibility after simply reciting the medical evidence).

The undersigned finds the ALJ's conclusion that the evidentiary record does not support, and instead undermines, Plaintiff's subjective statements is supported by substantial evidence. The ALJ's determination that Plaintiff's complaints are inconsistent with the medical evidence is therefore a clear and convincing reason for discounting her subjective symptom testimony. *See Smartt,* 53 F.4th at 499 (concluding that the ALJ properly discredited the claimant's testimony based on inconsistencies with objective medical evidence).

18

b.     Reported daily activities

Next, the ALJ made a reasonable determination based on specific, clear, and convincing evidence that Plaintiff's complaints of "mental limitations" were inconsistent with her admitted activities of daily living.  (AR 5261.)  An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms."  *Lingenfelter*, 504 F.3d at 1040.  Even if the claimant experiences some difficulty or pain, her daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.

As the ALJ observed, Plaintiff stated in her function report that she could drive a car, pay bills and count change, and shop in stores.  (AR 406.)  She further reported to consultative examiner Dr. McNairn that she completes household chores including cooking and laundry (with help from her teenage sons), does shopping and errands independently, and does not require assistance with feeding, bathing, dressing, driving, or budgeting.  (AR 551.)  Plaintiff also told Dr. McNairn that she had "good relationships" with coworkers, socializes with family, friends, and neighbors, and her leisure activities include television, movies, music, computer games, and hobbies.  (AR 551.)  The ALJ reasonably concluded that this testimony undermined Plaintiff's complaints that her "chronic anxiety with racing thoughts," "impaired concentration, attention, and memory," and "antisocial" behavior precluded any ability to work during the relevant period.  (AR 5261.)  *See Kaufmann,* 32 F.4th at 851–52 ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing."); *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (the plaintiff's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" provided "substantial evidence" to support the ALJ's decision.); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping");

19

*see also Lopez v. Colvin*, No. 1:13-CV-00741-SKO, 2014 WL 3362250, at \*16 (E.D. Cal. July 8, 2014) ("While the ALJ did not explain that Plaintiff's daily activities were *consistent* with specific work activity, the ALJ found Plaintiff's daily activities were *inconsistent* with the severity of symptoms he alleged . . . [and] [b]ecause Plaintiff's daily activities were inconsistent with the disabling symptoms he alleged, the ALJ properly found such claims not credible.") (emphasis in original).

Plaintiff again does not dispute this evidence. Instead, she criticizes the ALJ for "fail[ing] to take into account the limited manner in which Plaintiff performed her activities and the frequency in which she did so." (Doc. 17 at 12.) Plaintiff does not, however, identify any evidence of limitation or infrequency in her performance of the above-described activities. *See Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."). Given the inconsistency between her daily activities and her allegations of disabling impairments, as specifically identified by the ALJ, the undersigned finds that the ALJ's analysis of Plaintiff's subjective statements and testimony is supported by proper legal analysis and substantial evidence.

In sum, the undersigned finds that the ALJ provided at least two clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the extent of her limitations.

## V.    FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.    Plaintiff's motion for summary judgment (Doc. 17) be DENIED;

2.    The final decision of the Commissioner of Social Security be AFFIRMED; and

3.    The Clerk of Court be DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Jennifer Anne Thornberry, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings

and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 12, 2026**                        /s/ *Sheila K. Oberto*
                                          UNITED STATES MAGISTRATE JUDGE